Cowles v. Barber.

## COWLES v. BARBER et al.

Fraud: RESCISSION OF CONVEYANCE PROCURED BY. Defendant, by fraudulent representations as to the value of certain Texas land-scrip certificates, induced plaintiff to convey to him certain real estate and personal property in exchange for four of said certificates. The certificates were practically worthless, and plaintiff was substantially so informed through a letter received by him from the commissioner of the Texas land-office before the trade was consummated; but defendant produced such other evidence of the value of the certificates that plaintiff, not unreasonably, believed his statements rather than those of the land commissioner. *Held* that the conveyance was properly set aside in equity, and a judgment entered in plaintiff's favor for the damages sustained by him on account of the fraud.

*Appeal from Decatur Circuit Court.*—HON. JOHN W. HARVEY, Judge.

FILED, MARCH 8, 1888.

THIS is an action in equity by which the plaintiff seeks to set aside and cancel a conveyance of a farm made by him to the defendant, A. J. Barber, and for

damages, upon the ground that he was induced by certain fraudulent representations to make said conveyance, and to pay to said Barber a certain amount of money, and to convey and deliver to him certain other property. There was a trial by the court, and a decree for the plaintiff. Defendant appeals.

*Phillips & Day*, for appellants.

*Bullock & Hoffman*, for appellee.

ROTHROCK, J.—In July, 1883, the plaintiff and the defendant Barber entered into a written contract by which Barber agreed to assign and transfer to the plaintiff four land-scrip certificates of six hundred and forty acres each, which purported to be good for location on any of the vacant, unreserved and unappropriated lands of the state of Texas. In payment for these certificates the plaintiff agreed to convey his farm of one hundred acres, situated in Decatur county, and valued at fifteen hundred dollars, and four town lots in the town of Leon at four hundred dollars; one horse at one hundred dollars; one wagon at sixty-five dollars,— and pay four hundred and seventy-five dollars in money. In about a month after the written contract was entered into, it was fully complied with by the parties thereto. Within a short time thereafter the plaintiff commenced this action to set aside the conveyance of the land, and for damages, upon the ground that Barber committed a most gross fraud in procuring the plaintiff to enter into the contract; that said fraud consisted in representing to the plaintiff that said scrip, which was railroad land scrip, could be laid upon lands in Hall, Motley and Tom Green counties, in the state of Texas, and that said lands were desirable lands and favorable to locate upon, and that said scrip could be located in either of said counties. In an amendment to the petition, it was averred that Barber falsely represented to the plaintiff that said land-warrants could be located upon land in Hall, Motley or Tom Green counties, in the northern part of Texas. In a further amendment to the petition,

which was made after the evidence in the case was intro-
duced, it was alleged that, in addition to the fraudulent
representations theretofore pleaded, the said Barber, for
the purpose of inducing the plaintiff to enter into the
contract, represented to the plaintiff that said land-scrip
certificates were reasonably worth the sum of six
hundred and forty dollars each, and that said Barber
knew that the plaintiff was buying said certificates that
he might locate the same upon lands for his own occu-
pancy. All of these representations were alleged to be
false, and it was averred that the defendant well knew
they were false when they were made. The defendant
Barber took issue upon the averments of the petition
and its amendments, and, after a full trial upon a great
volume of evidence, the district court found the equi-
ties of the case with the plaintiff, and entered a decree
in his favor. A reversal of the decree is asked because
it is not sustained by a preponderance of the evidence.

There are some things which the evidence shows
beyond any controversy. A most material fact is that at
the time the contract was made these land certificates
were not worth to exceed thirty-five dollars each. The
defendant had been engaged in dealing in them for two
years, and must be presumed to have been well advised
as to their value. The plaintiff had no knowledge upon
the subject when the negotiations for the trade were
commenced. The result of these negotiations was that
he gave to the defendant property and money to the
value of twenty-five hundred and sixty dollars in
exchange for property which was worth in the market
not to exceed one hundred and five dollars. The evidence
is abundant that this was the market price of these cer-
tificates in the state of Texas, where they appear to
have been issued almost without limit. There is no
question made as to the value of the property which
plaintiff paid for these certificates, and it is a most sig-
nificant fact that the value corresponds exactly with the
representation which the plaintiff claims the defendant
made as to the value of the four certificates. That the
plaintiff was practically cheated and defrauded of his

property can admit of no doubt. The question is, has he any remedy or right of redress? It is claimed by counsel for appellant in argument that there was much incompetent and inadmissible evidence taken by the plaintiff and submitted to the court. This evidence in part consisted of the testimony of some two or three neighbors of the plaintiff, to the effect that they had been imposed upon by the defendant by the same representations of which the plaintiff complains. This was incompetent as original evidence in the case. The plaintiff had no right to show that the defendant was guilty of the same fraud with others as that by which plaintiff was cheated. It is claimed by appellee that this evidence was proper as an impeachment of the defendant, and when he was examined as a witness his attention was called to the fact as to whether he made the alleged representations to the said witnesses. He denied having made them. There is some question in our minds as to whether this would be proper for consideration, even as impeaching evidence, and we have disregarded it in determining the rights of the parties.

The plaintiff claimed in his evidence that the defendant directed him to go to the county surveyors of the counties in Texas and procure them to locate the lands. The plaintiff introduced in evidence letters from a large number of such surveyors, in which it was stated in substance that the certificates could not be located on land in their counties. We have not considered these letters as competent evidence. We do not regard it as necessary to determine their competency. It is claimed by plaintiff's counsel that they are competent, because they are reports from the very persons to whom defendant referred the plaintiff for information upon the subject to which they relate. Whether this position be correct we do not determine, and we, therefore, leave them out of consideration.

We come now to the question as to whether the plaintiff was cheated and defrauded by the defendant, or, as claimed by the defendant, did the plaintiff perform his contract with his eyes open, and without any

of the alleged frauds having been committed by the defendant? Probably the strongest ground of defense is the fact that before the plaintiff closed the trade he wrote a letter to the commissioner of the general land-office of the state of Texas, and received a reply thereto, in which it was stated that there was "very little good, vacant and unappropriated land in this state upon which land scrip can be located." It is strenuously contended by counsel for appellant that the plaintiff, having closed up the contract after he received this information, cannot be heard to complain. The position of counsel is that a party cannot rescind a contract or recover damages on account of false and fraudulent representations, unless he relied upon and was misled by the representations to his injury; and, as plaintiff was advised that there was very little good land in Texas upon which the certificates could be located, it cannot be said that he was deceived by the alleged false representations of the defendant. It appears from the evidence that Barber ascertained in some way that this letter was in the postoffice at Davis City. He induced the postmaster to deliver it to him, and he carried it to plaintiff's residence, some three or four miles distant. The plaintiff and Barber each read the letter. Now, if the plaintiff, after reading this letter, voluntarily, and without any interference from Barber, proceeded to perform the written contract, there would be much ground for holding that he cannot be heard to say that he was deceived by Barber's previous representations that the certificates could be conveniently located on good land. But we think the evidence shows that Barber did interfere, and by persuasion induced the plaintiff to accept his statements rather than those of the land commissioner. The plaintiff so testified as a witness, and says that "Barber claimed to be so positive it [the land] was there, and had told me that these surveyors of each county knew all about the land matters in their respective counties, and he [Barber] claimed to know,—and I supposed he knew, perhaps, as well as the commissioner; and as I

had noticed nothing particularly crooked in his deal-
ings, I believed he told me the truth substantially."
Now, it is true that Barber denies that he attempted to
influence the plaintiff on that day. But he does not
deny that he told him previously that there was abund-
ance of good land upon which the scrip could be
located. That he made such representations is not a
disputed fact in the case. In his examination as a wit-
ness, he conceded that he may have, in making this
trade, used a written instrument of which the following
is a copy :

"Eagleville, Harrison Co., Mo., June 6, 1883.

"This is to certify that I purchased from A. J.
Barber three land-scrip certificates for six hundred and
forty acres each, issued to the Missouri, Kansas & Texas
Railroad Company of Texas, dated September 22, 1880,
and numbered 442, 443 and 444, and that I have just
returned from Texas, where I have made a personal
examination of the lands in northern central Texas,
and find it a beautiful, healthful and rich country,
unsurpassed as a grazing and stock country, and very
productive farming and fruit country, and the climate
is magnificent; water and timber in abundance; and I
consider the railroad lands, upon which the land-scrip cer-
tificates can be located, worth from $2 to $3.50 per acre.
                                        "BENJAMIN HILL.

"Attest : WILLIAM HILL."

It is not surprising that the plaintiff should believe
the defendant, armed as he was with such appliances as
this, as helpers to the successful prosecution of his
business, rather than the letter received from the com-
missioner of the land-office. There can be but little
doubt that the statement of the commissioner was true,
and, if true, the defendant was guilty of the fraudu-
lent representations of which the plaintiff complains.
Indeed, he insists now that these certificates could have
been located on good land. He still takes issue with
the commissioner. In our opinion, the statement of the
commissioner, coupled with the fact that these certifi-
cates had but a nominal value, is a complete refutation

of the claim that they could have been located on land worth two or three or even one dollar an acre. If there is any land in Texas of any value upon which they could have been located, they would not be upon the market at thirty-five dollars for six hundred and forty acres. It appears from a report of the commissioner of the general land-office of the state of Texas that the excess of these certificates over the public lands subject to entry by them approximates seven millions of acres. The wonder is that they are worth thirty-five dollars each. If they could be used in entering land worth one dollar an acre, their value would approximate that sum. But we need not further elaborate the case.

We think the decree ought to be

AFFIRMED.